UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) No. 6:14-CR-02-GFVT-HAI |
| v. | ) |
| JAMIE L. LEBEL, | ) RECOMMENDED DISPOSITION |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral (D.E. 6), considers reported violations of supervised release conditions by Defendant Jamie J. Lebel. The Southern District of Ohio entered a judgment against Defendant on September 27, 2011, for failing to update his sex offender registration as required under 18 U.S.C. § 2250(a), the Sex Offender Registration and Notification Act. D.E. 1-2. The Judgment included 12 months of imprisonment and a five-year term of supervised release to follow that included a term of 90 days at a halfway house. *Id.* at 3. Defendant's term of supervised release began on August 6, 2012. District Judge Van Tatenhove accepted a transfer of jurisdiction as to Defendant on January 16, 2014. D.E. 1.

On March 24, 2014, the United States Probation Office ("USPO") issued a noncompliance summary ("the Summary") stating that Defendant had been terminated from the Kentucky Sex Offender Treatment Program ("SOTP") on January 22, 2014, for accruing eight unexcused absences since beginning the program on December 17, 2012, and for failing to pay treatment fees to SOTP. D.E. 2. USP Officer Greiwe recommended the imposition of six weekends of intermittent confinement, noting that Defendant's failure to participate in treatment constituted the first instance of non-compliance with his conditions of release, and that

Defendant had recently acquired full-time, stable employment. District Judge Van Tatenhove approved the Summary and modified Defendant's conditions of release as recommended to include six weeks of intermittent confinement. *Id.*

On June 4, 2014, the USPO issued a Supervised Release Violation report ("the Report") charging Defendant with two violations, and secured a warrant from District Judge Van Tatenhove. D.E. 3. The Report alleges that Defendant violated the condition of his supervised release that states "[t]he defendant shall not commit another federal, state or local crime." It further alleges that Defendant violated Standard Condition # 7, which states that "[t]he defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician."

Specifically, the Report states that, on June 1, 2014, Defendant was arrested by Kentucky State Police Trooper Childress and charged with 1) Speeding 26 MPH or over the Speed Limit; 2) No Registration Receipt; 3) Possession of an Open Alcoholic Beverage Container in a Motor Vehicle; 4) Operating a Motor Vehicle Under the Influence of Alcohol; and 5) No Operator's License. The Kentucky Uniform Citation issued against Defendant stated that Trooper Childress observed Defendant operating an automobile at a rate of 105 miles per hour in an area with a posted speed limit of 55 miles per hour. Trooper Childress also noted that both Defendant and the interior of the automobile smelled of alcohol. Defendant failed all the standard field sobriety tests, and Trooper Childress arrested him. A test of Defendant's blood-alcohol level administered by breath analysis at the Pulaski Detention Center revealed that Defendant had a blood-alcohol level of 0.126, which is above the legal limit in Kentucky.[1]

---

[1] *See* KRS § 189A.010.

The Court conducted an initial appearance pursuant to Rule 32.1 on June 16, 2014, and set a final hearing following Defendant's knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. D.E. 7. The United States made an oral motion for interim detention, while Defendant argued for release on conditions pending the final hearing. *Id.* Based on the heavy burden on Defendant under 18 U.S.C § 3143(a), the Court found that detention was required. *Id.*

At the final hearing on June 18, 2014, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 9. At the outset of the hearing, Defendant stipulated to both violations and admitted the factual basis for both violations, as described in the Report. *Id.* Defendant argued for revocation, a term of home incarceration and weekend confinement for an unspecified length of time, that he be required to participate in alcohol abuse treatment, and that his conditions of supervised release be modified to include no alcohol consumption rather than no excessive alcohol consumption. Additionally, the defense argued that he should only have to serve out the remainder of his current term of supervised release, which would constitute roughly three years. In the alternative to home detention and intermittent confinement, Defendant requested a sentence at the low end of his U.S. Sentencing Guidelines range. The United States argued for revocation, a term of six months of incarceration, the amendment of Defendant's supervised release conditions to require no alcohol consumption rather than no excessive alcohol consumption, and a term of five years of supervised release to follow.

The Court has evaluated the entire record, including the Supervised Release Violation Report and accompanying documents, the underlying Judgment in this matter, and Defendant's pre-sentence investigation report. Additionally, the Court has considered all of the 18 U.S.C. § 3553 factors imported into the 18 U.S.C. § 3583(e) analysis. Under 18 U.S.C. § 3583(e)(3), a

defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 18 U.S.C. § 2250, is a Class C felony. *See* 18 U.S.C. § 2, 18 U.S.C. § 641, 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).

Under U.S. Sentencing Guidelines Manual § 7B1.1, Defendant's admitted conduct qualifies as a Grade C violation with respect to both violations. Given Defendant's criminal history category of III (the category at the time of his conviction) and a Grade C violation, *see* U.S. Sentencing Guidelines Manual § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range, under the Revocation Table of Chapter 7, is 5–11 months. Both parties agreed to this calculation of the range.

The Court has considered all of the 18 U.S.C. § 3553 factors imported into the 18 U.S.C. § 3583(e) analysis, and finds that imprisonment of six months is appropriate based upon those factors. The Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary

4

issue. *See* U.S. Sentencing Guidelines Manual 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.").

The nature and circumstances surrounding Defendant's original offense are serious. The nature of the current violations is not directly related to Defendant's underlying conviction. However, taken together, the Court is concerned that, if Defendant is willing to speed 105 miles per hour, 50 miles over the posted speed limit, when impaired, Defendant may make even worse decisions more directly related to his status as a sex offender.

Defendant's history and characteristics reflect two sides of Defendant: one that is respectful to the Court and to his supervising officer, who is a hard worker doing his best to support his ailing wife; and one that violates community supervision twice, absconds from supervision, and drives while highly intoxicated at an incredibly dangerous speed. Thus, these aspects of his history and characteristics effectively balance to be neither mitigating nor aggravating.

The need to deter criminal conduct and protect the public is a driving factor in the Court's analysis. Defendant engaged in highly reckless behavior that put himself and others in danger. During the time that he was driving well in excess of the speed limit while intoxicated, Defendant was a millisecond away from causing a horrific tragedy.

The need to provide Defendant with education, training, or treatment is present in this case. These violations indicate that Defendant is in need of alcohol abuse treatment, and the Court is hopeful that such treatment will help Defendant abstain from alcohol going forward.

The need to avoid unwarranted sentencing disparities among similarly situated Defendants is addressed by the imposition of a sentence within Defendant's U.S. Sentencing Guidelines range.

The most significant factor in this case is the breach of trust committed by Defendant. The nature of supervised release includes trust placed in Defendant to adhere to the conditions of his release. Defendant committed these violations on the same day that he was released from Court-ordered intermittent confinement. He was released at 6:00 p.m. and was pulled over at 9:40 p.m. with a blood-alcohol level in excess of 0.126. On that day, Defendant should have been very aware of the consequences of poor decision-making resulting in violations of his supervised release conditions. Instead, Defendant committed two dangerous violations very shortly after his release.

The Court is also troubled by the lack of predictability in Defendant's conduct leading to these violations. His pre-sentence investigation report reflects that Defendant stated that he did not suffer from alcohol abuse. Therefore, this recent abuse is either a new issue or Defendant was untruthful during the presentence investigation. Either possibility is very troubling. The unpredictability in Defendant's conduct also means that the Court cannot divine what condition or conditions could be imposed to address potential dangerous behavior were Defendant sentenced to home incarceration and intermittent confinement as proposed by Defendant. The previously-imposed condition of no excessive alcohol use was not sufficiently effective, and the Court has no reason to believe elevating that proscription to no alcohol use would sufficiently deter criminal conduct and protect the public in the near-term as an alternative to incarceration. The Court finds that revocation and a term of incarceration of six months followed by five years of supervised release with emphasis on the condition that Defendant participate in alcohol abuse

treatment at the discretion of the USPO and modification of Defendant's conditions to include that he shall not consume alcohol at all, rather than not consume alcohol to excess, is sufficient but not greater than necessary to meet the section 3353(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). Defendant's conviction under 18 U.S.C. §2250 carried a maximum supervised release term of life. Under section 3583(h) and (k), the maximum term of supervised release that can be reimposed at this point remains life. 18 U.S.C. § 3583(h), (k). The Court recommends that a term of five years of supervised release be imposed following revocation because the Court believes that Defendant can alter his behavior and be successful going forward if he utilizes the tools available to him through supervision. The Court is also hopeful that Defendant's term of incarceration will encourage him to take the conditions of his supervised release seriously, and that he will make the most of his time on supervised release.

Based on the foregoing, the Court **RECOMMENDS** revocation and imprisonment for a term of six months based on the violations found, with a five-year term of supervised release under the conditions previously imposed to follow, with emphasis on the condition that Defendant participate in substance alcohol abuse treatment at the discretion of the USPO and modification of Defendant's conditions to include that he shall not consume alcohol at all, rather than not consume alcohol to excess.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

This the 23rd day of June, 2014.

Signed By:
Hanly A. Ingram
United States Magistrate Judge